UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DAVID PATCHAK,                          )
                                        )
            Plaintiff,                  )
                                        )
        v.                              )        Civil Action No. 08-1331 (RJL)
                                        )
KEN L. SALAZAR, Secretary of the        )
Interior, and LARRY ECHO HAWK,          )
In his official capacity as Assistant   )
Secretary of the United States          )
Department of the Interior,             )
Bureau of Indian Affairs,[1]            )
                                        )
            Defendants,                  )
                                        )
        and                             )
                                        )
MATCH-E-BE-NASH-SHE-WISH                )
BAND OF POTTAWATOMI                     )
INDIANS,                                )
                                        )
        Intervenor-Defendant.           )

## MEMORANDUM OPINION
(August _19_, 2009) [#19, #20, #36, #41, #46, #52]

Plaintiff David Patchak brings this lawsuit challenging the Secretary of the

Interior's ("Secretary" or "United States") decision to take into trust two parcels of land

in Allegan County, Michigan, on behalf of intervenor-defendant Match-E-Be-Nash-She-

Wish Band of Pottawatomi Indians (the "Tribe") pursuant to the Indian Reorganization

---

[1]      Pursuant to Federal Rule of Civil Procedure 25(d), if a public officer named as a party to
an action in his official capacity ceases to hold office, the Court will automatically substitute that
officer's successor.  Accordingly, the Court substitutes Ken L. Salazar for Dirk Kempthorne and
Larry Echo Hawk for Carl J. Artman.

Act ("IRA"), 25 U.S.C. § 465.  Plaintiff seeks an injunction barring the Secretary from

taking the land into trust on the basis that the Tribe was not under Federal jurisdiction in

June 1934, as required by the IRA.  (Compl. ¶ 28 [Dkt. #1].)  Presently before the Court

is the United States' Motion to Dismiss [Dkt. #20], the Tribe's Motion for Judgment on

the Pleadings [Dkt. #19], and plaintiff's motions for preliminary injunctive relief [Dkt. #s

36, 46].  Because plaintiff fails to establish prudential standing, the Court will GRANT

the Motion to Dismiss and Motion for Judgment on the Pleadings and will DENY the

motions for preliminary injunctive relief.

## BACKGROUND

In May 2005, the Bureau of Indian Affairs of the Department of Interior

announced that it would take 147 acres of land in Wayland Township, Michigan, (the

"Bradley Property") into trust for the Tribe pursuant to section 5 of the IRA, (Compl. ¶

21), which authorizes the Secretary to take land into trust "for the purpose of providing

land for Indians."[2]  Notice of Final Agency Determination to take Land into Trust Under

25 C.F.R. Part 151, 70 Fed. Reg. 25,596 (Bureau of Indian Affairs, Interior, May 13,

---

[2]    Section 5 of the IRA provides:

The Secretary of the Interior is authorized, in his discretion, to acquire, through
purchase, relinquishment, gift, exchange, or assignment, any interest in lands,
water rights, or surface rights to lands, within or without existing reservations,
including trust or otherwise restricted allotments, whether the allottee be living or
deceased, for the purpose of providing land for Indians.

* * *

Title to any lands or rights acquired pursuant to this Act . . . shall be taken in the
name of the United States in trust for the Indian tribe or individual Indian for
which the land is acquired, and such lands or rights shall be exempt from State
and local taxation.

25 U.S.C. § 465.  The IRA defines the term "Indian" to "include all persons of Indian descent
who are members of any recognized Indian tribe now under Federal jurisdiction." *Id.* § 479.

2005).  The Tribe had petitioned Interior in 2001 to take the property into trust, and the Tribe plans to construct and operate a casino on the property to promote economic self-sufficiency and advance its members' economic well-being.  (Compl. ¶ 20); *see generally Michigan Gambling Opposition v. Kempthorne*, 525 F.3d 23, 26 (D.C. Cir. 2008) ("*MichGO II*").

Shortly after Interior's announcement, the non-profit membership organization Michigan Gambling Opposition ("MichGO") filed a lawsuit in this district in an effort to obstruct the proposed casino.[3]  MichGO alleged that Interior's approval of the casino violated both the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2701, *et seq.*, and the National Environmental Protection Act ("NEPA"), 42 U.S.C. §§ 4321, *et seq.* MichGO also contended that section 5 of the IRA was an unconstitutional delegation of legislative authority.  The district court granted summary judgment for the defendants in February 2007, *Michigan Gambling Opposition v. Kempthorne*, 477 F. Supp. 2d 1, 22 (D.D.C. 2007) ("*MichGO I*"), and our Court of Appeals affirmed in April 2008, *MichGO II*, 525 F.3d at 26.  MichGO's petition for rehearing *en banc* review was subsequently denied in July 2008.[4]  *Michigan Gambling Opposition v. Kempthorne*, No. 07-5092 (D.C. Cir., Order filed July 25, 2008) ("*MichGo III*").

---

[3]    MichGO filed its lawsuit during the required 30-day waiting period following Interior's announcement of its decision to take the land into trust.  *See* 25 C.F.R. § 151.12(b).

[4]    Our Court of Appeals granted, however, MichGO's motion to stay issuance of the mandate pending the Supreme Court's decision on MichGO's pending petition for a writ of certiorari, *MichGo III*, No. 07-5092 (D.C. Cir., Order filed Aug. 15, 2008)), thereby precluding Interior from taking the land into trust immediately.

Plaintiff filed the present lawsuit shortly thereafter, on August 1, 2008, pursuant to

§ 702 of the Administrative Procedure Act ("APA").  Plaintiff alleges that the Tribe was

not under Federal jurisdiction in June 1934, when the IRA was enacted, and therefore

Interior lacks authority to take the Bradley Property into trust for the Tribe under section

5 of the IRA.  (Compl. ¶¶ 25–33.)  Plaintiff further alleges that if the property is taken

into trust, his rural lifestyle and community will be adversely affected by the proposed

casino.[5]  (Compl. ¶ 9.)  The catalyst for plaintiff's lawsuit—filed *three years* after

Interior's announcement of its decision to take the land into trust—was the Supreme

Court's grant of a petition for a writ of certiorari in February 2008 to review the First

Circuit's unrelated decision in *Carcieri v. Kempthorne*, 497 F.3d 15 (1st Cir. 2007),

*certiorari granted in part*, 128 S. Ct. 1443 (2008).[6]  (*See* Compl. ¶¶ 29-30, 33).  In

---

[5]      In his complaint, plaintiff describes his injuries as follows:

> Mr. Patchak will be disproportionately affected if the Property is placed in
> trust and the Gun Lake Band follows through with its plans to build a
> 200,000-square-foot casino complex that is anticipated to draw more than
> 3.1 million visitors a year.  Such a casino would detract from the quiet,
> family atmosphere of the surrounding rural area.  Among the negative
> effects of building and operating the anticipated casino in Mr. Patchak's
> community are: (a) an irreversible change in the rural character of the
> area; (b) loss of enjoyment of the aesthetic and environmental qualities of
> the agricultural land surrounding the casino site; (c) increased traffic; (d)
> increased light, noise, air, and storm water pollution; (e) increased crime;
> (f) diversion of police, fire, and emergency medical resources; (g)
> decreased property values; (h) increased property taxes; (i) diversion of
> community resources to the treatment of gambling addiction; (j)
> weakening of the family atmosphere of the community; and (k) other
> aesthetic, socioeconomic, and environmental problems associated with a
> gambling casino.

(Compl. ¶ 9.)

[6]      During its appeal, MichGO attempted to add the same claim based on *Carcieri* that
plaintiff advances here, but our Court of Appeals denied MichGO's motion to supplement.
(*MichGo III*, No. 07-5092 (D.C. Cir., Order filed Mar. 19, 2008)).

*Carcieri*, the First Circuit had held that Interior had the authority to take land into trust for the Narragansett Indian Tribe in Rhode Island under section 5 of the IRA despite the fact that the tribe was not under Federal jurisdiction when the IRA was enacted.[7] *Carcieri*, 497 F.3d at 34.

On October 6, 2008, both the United States and the Tribe filed Rule 12 motions seeking judgment in their favor on the basis that plaintiff lacks prudential standing.[8] While the United States' and the Tribe's motions were pending, plaintiff filed two motions for preliminary relief seeking orders enjoining Interior from taking the land into trust if, and when, the Supreme Court denied MichGO's petition for a writ of certiorari.[9] The Court heard oral argument on plaintiff's motions for preliminary injunctive relief on January 26, 2009, at which time the Court denied plaintiff's request for a temporary restraining order and took plaintiff's request for a preliminary injunction under advisement.[10] For the following reasons, the Court agrees that plaintiff, at a minimum,

---

[7]     The Supreme Court ultimately reversed the First Circuit, holding that the phrase "now under federal jurisdiction," as part of the IRA's definition of "Indian," unambiguously refers to those tribes that were under Federal jurisdiction when then IRA was enacted in 1934. *Carcieri v. Salazar*, 129 S. Ct. 1058, 1061 (2009). Because the parties effectively conceded that the Narragansett Indian Tribe was not under Federal jurisdiction at that time, the Court held that Interior was without authority to take land into trust for the tribe. *Id.* at 1061, 1068.

[8]     The Tribe also argues that plaintiff's claim is barred by the doctrine of laches.

[9]     Plaintiff's second motion strategically sought an injunction enjoining Interior from taking the land into trust prior to a decision by this Court on plaintiff's first motion for preliminary injunctive relief.

[10]     The Supreme Court denied MichGO's petition for a writ of certiorari on January 21, 2009. (Joint Notice, Jan. 21, 2009 [Dkt. #45].) The Court of Appeals' mandate issued January 27, 2009, and Interior took the Bradley Property into trust for the Tribe on January 30, 2009. (Defs.' Notice, Jan. 30, 2009 [Dkt. #49].)

lacks prudential standing to challenge Interior's authority pursuant to section 5 of the
IRA.

## ANALYSIS

The United States and the Tribe argue that plaintiff's interests are fundamentally at
odds with the purpose of the IRA and therefore plaintiff does not fall within the IRA's
"zone of interests" and lacks prudential standing.  I agree.

Standing to pursue a claim encompasses two components: constitutional and
prudential.  *Hazardous Waste Treatment Council v. EPA*, 861 F.2d 277, 281 (D.C. Cir.
1988).  As to the former, a plaintiff must allege "that he has suffered injury in fact, that
the injury is fairly traceable to the actions of the defendant, and that the injury will likely
be redressed by a favorable decision." *Bennett v. Spear*, 520 U.S. 154, 162 (1997)
(internal quotation marks omitted).  As to the latter, the "plaintiff's grievance must
arguably fall within the zone of interests protected or regulated by the statutory provision
or constitutional guarantee invoked in the suit." *Id.* (citing *Allen v. Wright*, 468 U.S. 737,
751 (1984)); *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Engineers*, 417 F.3d
1272, 1287 (D.C. Cir. 2005).  If a plaintiff's claim fails either component, the Court lacks
subject matter jurisdiction over the lawsuit.

While the prudential standing requirement is "not meant to be especially
demanding," it excludes plaintiffs whose interests are "so marginally related to or
inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed
that Congress intended to permit the suit." *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388,

399–400 (1987); *Hazardous Waste Treatment Council*, 861 F.2d at 283 (prudential standing test "demands less than a showing of congressional intent to benefit but more than a 'marginal relationship' to the statutory purposes" (internal alteration omitted)). Indeed, the idea behind the requirement is "a presumption that Congress intends to deny standing to 'those plaintiffs whose suits are more likely to frustrate than to further statutory objectives.'" *Hazardous Waste Treatment Council v. Thomas*, 885 F.2d 918, 922 (D.C. Cir. 1989) ("*Thomas*") (quoting *Clarke*, 479 U.S. at 397, n.12). Where, as here, a plaintiff's claim is brought pursuant to the judicial review provisions of the APA, the Court looks to interests protected by the substantive provisions of the underlying statute. *See Bennett*, 520 U.S. at 175; *see also Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1074 (D.C. Cir. 1998) ("The first step in the prudential standing analysis is to identify the interests protected by the statute.").

Plaintiff, without a doubt, is not an intended beneficiary of the IRA. The purpose and intent of the IRA is to enable tribal self-determination, self-government, and self-sufficiency in the aftermath of "a century of oppression and paternalism." *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 152 (1973) (citing H.R. Rep. No. 1804, 73d Cong. 2d Sess., 6 (1934)). As the Supreme Court itself noted, "[t]he overriding purpose of [the IRA] was to establish machinery whereby Indian tribes would be able to assume a greater degree of self-government, both politically and economically." *Morton v. Mancari*, 417 U.S. 535, 542 (1974); *see also MichGO II*, 525 F.3d at 32 (overall purpose of the IRA is to "advance[e] economic development among American Indians"); *Feezor v. Babbitt*, 953 F. Supp. 1, 5 (D.D.C. 1996). In addition, Section 5's grant of authority to the Secretary

to take land into trust at his discretion for Indians and Indian tribes serves the specific

purpose of reversing the consequences of the federal government's previous allotment

policy, which had resulted in many tribal lands being lost. *See MichGO II*, 525 F.3d at

31–32 (discussing section 5's role as part of a "broad effort to promote economic

development among American Indians, with a special emphasis on preventing and

recouping losses of land caused by previous federal policies"). In short, both the IRA as

a whole, and section 5 in specific, operate to protect, and promote, tribal self-

determination and economic independence.

  Plaintiff's alleged injuries could not be further divorced from these objectives.

Plaintiff is not an Indian, nor does he purport to seek to protect or vindicate the interests

of any Indians or Indian tribes. Rather, plaintiff seeks to vindicate only his own

environmental and private economic interests. (Compl. ¶ 9.) Plaintiff also fails to point

to any explicit, or implicit, indication in the IRA or its legislative history that the statute

is intended to protect, or benefit, an individual in plaintiff's position. In an effort to

sidestep this paucity of evidence, plaintiff alleges instead that he has a general interest in

ensuring that only qualified tribes receive benefits under the IRA. But such an interest, if

true, is indistinguishable from the general interest every citizen or taxpayer has in the

government complying with the law. To find that plaintiff has prudential standing on this

basis alone would make a mockery of the prudential standing doctrine altogether. *See*

*Hazardous Waste Treatment Council*, 861 F.2d at 283 ("[A] rule that gave any such

plaintiff standing merely because it happened to be disadvantaged by a particular agency

decision would destroy the requirement of prudential standing; any party with

constitutional standing could sue."). Indeed, this Court has held at least twice that merely

being a taxpayer is insufficient to establish prudential standing under the IRA. *Sault Ste.*

*Marie v. Andrus*, 458 F. Supp. 465, 468 (D.D.C. 1978) (individual taxpayers did not have

prudential standing to challenge tribe's eligibility under IRA for Secretary of Interior to

take land into trust on tribe's behalf); *Tacoma v. Andrus*, No. 77-1423, slip op. at 4

(D.D.C. Jan. 20, 1978) [Dkt. #30–32 (same).   Plaintiff, accordingly, does not fall within

the group of those "who in practice can be expected to police the interests" protected by

the IRA, *Mova Pharm. Corp.*, 140 F.3d at 1075, but rather is one whose "suit[] [is] more

likely to frustrate than to further statutory objectives," *Thomas*, 885 F.2d at 922 (internal

quotation marks omitted).[11]

---

[11]     Plaintiff's reliance on cases involving challenges to proposed casinos under IGRA and
NEPA also cannot save plaintiff's case. Unlike IGRA and NEPA, no evidence indicates that the
IRA focuses on or otherwise seeks to protect the interests of the surrounding community or the
environment. IGRA, for example, only permits gaming on lands taken into trust after October
1988 if the land is an "initial reservation" unless there has been a finding that gaming "would be
in the best interest of the Indian tribe and its members, and would not be detrimental to the
surrounding community." 25 U.S.C. § 2719(b)(1)(A). Similarly, NEPA's overarching focus is
environmental interests, and it requires agencies take a "hard look" at the environmental
consequences of their proposed courses of action. *Marsh v. Oregon Natural Res. Council*, 490
U.S. 360, 374 (1989). Because there is no evidence that Congress similarly enacted the IRA to
protect any such interests, cases finding prudential standing under IGRA and NEPA are
inapposite. *E.g.*, *Citizens Exposing Truth about Casinos v. Kempthorne*, 492 F.3d 460, 464
(D.C. Cir. 2007) (plaintiffs had prudential standing to challenge Secretary's interpretation of
"initial reservation" exception because "inclusion of [the surrounding community] provision
demonstrates that Congress could not have intended to preclude efforts to enforce it, even if
enforcement might prevent a landless tribe from gaining the benefits of IGRA"); *TOMAC v.
Norton*, 193 F. Supp. 2d 182, 189–90 (D.D.C. 2002) (citizens organization had prudential
standing under IGRA and NEPA to challenge certain aspects of Bureau of Indian Affairs'
decision to take land into trust for a tribe planning to construct a casino). Indeed, many, if not
all, of the injuries plaintiff alleges were previously alleged by the plaintiff in the MichGO action,
which *was* brought pursuant to IGRA and NEPA. *Compare* Compl. ¶ 9 *with MichGO I*, 477 F.
Supp. 2d at 3.

Accordingly, because plaintiff's interests do not only not fall within the IRA's

zone-of-interests, but actively run contrary to it, plaintiff lacks prudential standing. As a

result, this Court lacks subject matter jurisdiction over this case and must, and will

GRANT the United States' Motion to Dismiss and the Tribe's Motion for Judgment on

the Pleadings.[12] Accordingly, plaintiff's outstanding motions, including his motions for

preliminary injunctive relief, are DENIED.[13]

RICHARD J. LEON
United States District Judge

---

[12]    The Court's continuing subject matter jurisdiction over this case is also seriously in doubt
given that Interior took the land into trust on January 30, 2009. Under the Indian lands exception
to the Quiet Title Act, the United States' waiver of sovereign immunity in civil actions "to
adjudicate a disputed title to real property in which the United States claims an interest" does not
apply "to trust or restricted Indian lands." 28 U.S.C. § 2409a(a); *see, e.g., Governor of Kansas v.
Kempthorne*, 516 F.3d 833, 843–44 (10th Cir. 2008) (plaintiff's APA challenge to Interior's
decision to take land into trust for Indian tribe was barred by Quiet Title Act when land was
already held in trust). However, because the Court finds that plaintiff lacks prudential standing,
the Court need not, and does not, reach that issue in this opinion.

[13]    Plaintiff also filed a motion for summary judgment [Dkt. #52] following his motions for
preliminary injunctive relief. The parties also filed a joint motion for the Court to delay
consideration of the emergency injunctive relief until after the United States Supreme Court
ruled on MichGO's petition for writ of certiorari. The Court will deny these motions as moot.